## MURPHY v. STOUTAMIRE, Chief of Police.

Circuit Court, Leon County.
May 17, 1957.

Doyle E. Carlton, Mabry, Carlton, Fields & Ward, Tampa, for petitioner.

Edward J. Hill, Turnbull & Hill, Tallahassee, for respondent.

Julius F. Parker, Caldwell, Parker, Foster & Wigginton, Tallahassee, amicus curiae.

W. MAY WALKER, Circuit Judge.

On February 27, 1957 several members of the press, photographers, and representatives of television stations were attracted to the trial of a certain case in the municipal court of Tallahassee.

During the course of the trial, the petitioner, Jack Murphy, took pictures of certain witnesses who were under the rule and who were occupying a corridor immediately outside the courtroom which had

been designated as the place for occupancy by the witnesses in the absence of a regular witness room. The rule excluding the witnesses from the courtroom while not on the witness stand had been duly and seasonably invoked. During a recess a photographer, other than the petitioner, approached the municipal judge and requested permission to take pictures inside the courtroom during the recess. In response to this request the municipal judge " * * * instructed said photographer that the court did not allow that, nor did the court want pictures taken on the top floor where the courtroom is located, that is, the top floor of the city hall where city court holds its sessions of court." As soon as such recess terminated and the municipal court reconvened, the municipal judge learned that the petitioner and the other photographer had already taken pictures " * * * in the corridor that had been set aside by the court as a witness room." Whereupon the municipal judge directed the destruction of the film so made by the photographers under terms and terminology hereinafter mentioned.

Thereafter, on March 11, 1957, the petitioner was adjudicated guilty of contempt of court, not for taking pictures under the circumstances related, but for not destroying the film he had made when instructed to do so by the municipal court. For such adjudicated contempt, the Honorable John Allison Rudd, presiding judge of such municipal court, sentenced petitioner to pay a fine of $100 or be imprisoned in the city jail for a term of 30 days and, in addition thereto, to be imprisoned mandatorily in such city jail for a period of five hours.

The cause is now on final hearing before the writer in a habeas corpus proceeding in which the petitioner challenges the validity of the judgment of the municipal court, and avers, upon several stated grounds, that he is unlawfully imprisoned, detained, and deprived of his personal liberty.

The writer entertains doubt as to whether the order requiring the destruction of the film is sufficiently positive and unqualified in its terms to be used as a basis for adjudicating petitioner guilty of contempt of court under the circumstances. The instruction from the municipal judge upon which the adjudication of contempt was predicated required the petitioner to destroy the film, and further "instructed said photographer that he would be on his honor to destroy the film instead of then and there turning said film over to the court."

The quoted aspect in the instruction weakened rather than strengthened it as a solemn, unconditional, and unqualified man-

date for the destruction of the film. If the failure to destroy the film under the circumstances was in the honest judgment of the photographer consistent with honor, it may well be that the order of the municipal judge was not violated and there was no contempt. See 17 C. J. S., Contempt, page 16, wherein it is said—

"A decree or order will not be expanded by implication in contempt proceedings, beyond the meaning of its terms when read in the light of the issues and the purpose for which the suit was brought, and the facts found must constitute a plain violation of the decree or order so read. To justify adjudging one guilty of contempt for the alleged violation of an order, the order must be so clearly expressed that when applied to the act complained of it will appear with reasonable certainty that it has been violated. Hence, a party cannot be punished for contempt * * * for failing to do something not specified in the order, *nor should a party be punished for disobedience of an order which is capable of a construction consistent with innocence.*" (Italics added.)

The circumstances that occasioned the existence of the qualification in the instruction are appreciated, however. When the instruction for the destruction of the film was given by the highly respected municipal judge he had no desire to condemn or punish petitioner. He evidently wanted to be abundantly fair and simply wanted the petitioner to desist from pursuing a duly forbidden activity which reasonably tended to obstruct the administration of justice or which tended to bring the municipal court into disrepute or disrespect. Since the petitioner did not evidence any intent to resist or refuse to obey the instruction, the municipal judge naturally expected cooperation and obedience from petitioner.

Moreover, it is clear to the writer, and seemingly consistent with the great weight of authority, that the wilful refusal to obey an unqualified mandate from a municipal court for the destruction of film, made or "shot" under the circumstances in the instant case, constitutes an offense against the authority and dignity of such tribunal for which the offender, in an appropriate proceeding consistent with due process of law, can be adjudicated guilty of contempt and justly punished. A discussion of this question is unimportant in the instant proceeding, however, because of the important point with respect to the denial of due process of law raised by the petitioner and hereinafter discussed.

As indicated, among other questions raised by the petitioner is the proposition that he is deprived of his freedom without due

process of law in violation of the 14th amendment to the constitution of the United States and sections 1, 12, and 13 of the declaration of rights of the constitution of Florida.

The contempt for which the petitioner was sentenced is a constructive contempt and the authorities almost uniformly hold with respect to " * * * constructive contempts, or those which are committed without the actual presence of the court, it is essential that a hearing should be allowed and the contemnor permitted, if he so desires, to interpose a defense to the charges before punishment is imposed."

The proposition also seems to be equally well-founded that " * * * in a proceeding for contempt of court, committed outside the court, there must first be an accusation in some form, made either by the judge himself, or by someone in possession of the facts, sufficient to constitute a prima facie case, and upon this accusation the party charged must be notified in order that he may have a reasonable time in which to make his defense." See annotation and numerous authorities in 57 A. L. R. 548 under Constructive Contempt.

See also, generally, Ex parte Sturm, 51 A. L. R. 356, and similar authorities; 12 Am. Jur., Contempt, § 35, page 415, also related section in 1956 supplement; 12 Am. Jur., Contempt, § 70, page 437; 17 C. J. S., Contempt, §§ 4, 5, 71 (b), 86 (2) ; and Demetree v. State ex rel. Marsh, 89 So. 2d 498.

In passing judgment upon the question whether or not petitioner has been denied due process of law, the writer is bound, of course, by the record of the case as lodged in this court. Such record shows no affidavit, rule to show cause or other pleading or formal accusation against petitioner.

The record does not show that petitioner was permitted to defend against the charge of contempt or that he was brought before the court at any time for trial or for the pronouncement of sentence.

Hence, the record not reflecting that petitioner was accorded the due process of law guaranteed to him under the constitution of the United States and the constitution of Florida, the asserted cause for detention should be held legally insufficient and the petitioner immediately granted his liberty. It is so ordered, and the petitioner is, accordingly, discharged without prejudice to further proceedings in said municipal court consistent with due process of law.